UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STEVEN LOPEZ,                          :
            Plaintiff,                 :
                                       :
        v.                             :         CA 10-292 S
                                       :
DELAIR GROUP LLC,                      :
            Defendant.                 :


**REPORT AND RECOMMENDATION**

David L. Martin, United States Magistrate Judge

Before the Court is Defendant Delair L.L.C.'s Motion for Summary Judgment (Docket ("Dkt.") #13) ("Motion for Summary Judgment" or "Motion"). The Motion has been referred to me for preliminary review, findings, and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B). A hearing was conducted on December 14, 2011. For the reasons stated below, I recommend that the Motion be granted.

I.  **Overview**

This is a products liability action arising from a tragic accident in which Plaintiff Steven Lopez ("Plaintiff" or "Mr. Lopez") suffered catastrophic injuries as the result of diving into an above-ground pool allegedly manufactured and distributed by Defendant Delair Group L.L.C. ("Defendant" or "Delair"). Defendant seeks summary judgment on the basis of the affirmative defense that Plaintiff assumed the risk of his injuries.

## II.  Facts and Travel

Delair is a New Jersey Limited Liability Company organized under New Jersey's laws with a principal place of business in Delair, New Jersey.  Complaint (Dkt. 1, Exhibit ("Ex.")) ¶ 2; Defendant Delair L.L.C.'s Local Rule Cv 56 Statement of Undisputed Facts in Support of Their Motion for Summary Judgment (Dkt. #14) ("Defendant's SUF") ¶ 1.  Delair is in the business of designing, manufacturing, marketing, and distributing above-ground swimming pools.  Complaint ¶ 3.  Its pools have been sold in Rhode Island. Id.

At the time of the accident, Plaintiff was seventeen years old and a student at East Providence High School.  See Defendant's SUF ¶ 2.  On June 20, 2008, he attended a captain's practice for the East Providence High School football team in the morning and returned home around 1:00 p.m.  Id.  Later that day, Plaintiff and several friends attended a party by invitation at his friend Allison Gorman's house.  Id. ¶ 3.

On arriving at the Gormans' house, Plaintiff played volleyball and ate some food with his friends.  Id. ¶ 4.  After about an hour, Plaintiff and four friends entered the Gormans' pool, allegedly an above-ground, Esther Williams model manufactured by Delair.  Id. ¶¶ 5-6.[1]  The water in the pool was approximately four feet deep.  Id.

---

[1] According to Defendant, "[p]rior to June 20, 2008, Delair sold above-ground pools known as the Esther Williams model manufactured by Delair."  Defendant's SUF ¶ 9.

¶¶ 11, 21. For the next five to ten minutes, Plaintiff and his friends swam in the pool and played with a hula hoop. Id. ¶ 10. Prior to his injury, Plaintiff dove horizontally into the pool a couple of times. Id. ¶ 12; see also Plaintiff's Statement of Disputed Facts Pursuant to Local Rule 56(a)(3) (Dkt. #24) ("Plaintiff's SDF") ¶ 12 (clarifying that by "dive" Plaintiff meant entering the pool with hands outstretched but with his body horizontal to the pool). He also entered the pool by performing a couple of cannonballs prior to his injury. Defendant's SUF ¶ 13; see also id., Ex. B (Deposition of Steven Lopez, Day 2 ("Lopez Dep. Day 2")) at 9.

At some point, one of Plaintiff's friends, who was also in the pool, held the hula hoop near the surface of the water and Plaintiff dove through it. Id. ¶ 14. Prior to the dive, Plaintiff was standing on the deck surrounding the pool with his feet at the edge of the deck. Id. ¶¶ 15-16. He leaned forward and pushed off with his feet from the deck and dove into the pool through the hula hoop. Id. ¶ 17. Plaintiff began the dive with his arms by his side, and he then swung them out over his head as he dove. See id. ¶ 18. He intentionally dove into the pool doing a horizontal dive aimed across the pool, as opposed to a vertical dive aiming down. Id. ¶ 19. He did this in order to try to avoid hitting the bottom of the pool because, having been in the pool for about ten minutes and having been in it prior to June 20, 2008, he was aware that the

pool was shallow.  <u>Id.</u> ¶¶ 20, 34.  However, he suffered severe injuries to his spine which rendered him a quadriplegic.  <u>Id.</u> ¶ 22; <u>see also</u> Plaintiff's SDF ¶ 22.[2]  After he was injured, his friends lifted him onto the pool deck.  Defendant's SUF ¶ 26.  Plaintiff never lost consciousness.  Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule 56(a)(4) ("Plaintiff's SUF") ¶ 41.

At the time of the accident, the Gormans' pool had several warnings on it.  Defendant's SUF ¶ 36; <u>see also</u> <u>id.</u>, Ex. C (pictures of pool warnings).  One warning was attached to the top ledge of the pool adjacent to the ladder and stated: DANGER NO DIVING SHALLOW WATER DIVING MAY CAUSE DEATH OR PERMANENT INJURY. <u>Id.</u> ¶ 37; <u>see also</u> <u>id.</u>, Ex. C.  The warning included a pictogram of a figure of a person with its head striking the bottom of the pool. <u>Id.</u> ¶ 37; <u>see also</u> <u>id.</u>, Ex. C.  Another warning was placed on the side of the pool on the inside edge above water level and stated: DANGER: NO DIVING-SHALLOW WATER.  <u>Id.</u> ¶ 38; <u>see also</u> <u>id.</u>, Ex. C.

Plaintiff understood the warning labels on the subject pool to mean that he should not dive vertically into the pool but that by executing a horizontal, flat dive he was acting safely on the day of the accident.  Plaintiff's SUF ¶¶ 46-47.  He did not understand or believe that he could sustain an injury diving horizontally into

---

[2] Defendant states that "[a]s a result of his head striking the bottom of the pool, Mr. Lopez suffered severe injuries to his spine which rendered him a quadriplegic."  Defendant's SUF ¶ 22.  Plaintiff disputes that he struck his head on the bottom of the pool.  <u>See</u> Plaintiff's SDF ¶ 22.  There is no disagreement, however, that Plaintiff was injured while diving into the Gormans' pool.

the pool.  Id. ¶ 48.  Indeed, prior to the date of the accident, Plaintiff had never hurt himself by diving into any other pools too vertically and hitting the bottom or by executing horizontal, flat dives.  Id. ¶ 45.[3]

Plaintiff filed the instant Complaint against Delair in Rhode Island Superior Court on or about June 14, 2010.  See Complaint at 4.  The Complaint contains four counts, alleging strict liability, failure to warn, breach of warranty, and negligent design.  See id. ¶¶ 10-33.  On or about July 13, 2010, Defendant removed the action to this Court.  See Notice of Removal (Dkt. #1) at 3; see also Dkt.

## III. Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  Commercial Union Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed. R. Civ. P. 56(c)); accord Kearney v. Town of Wareham, 316 F.3d 18, 21 (1st Cir. 2002).  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of

---

[3] Plaintiff testified that in his previous diving experience, his feet had touched the bottom of the deep end of the school pool while executing a "pencil dive," or jumping into the pool and attempting to go straight in vertically.  Plaintiff's SUF ¶ 42 (citing Deposition of Steven Lopez, Day 1 ("Lopez Dep. Day 1") at 33, 34, Lopez Dep. Day 2 at 16).

the non-moving party.  A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." <u>Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000)(quoting <u>Sánchez v. Alvarado</u>, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." <u>Feliciano de la Cruz v. El Conquistador Resort & Country Club</u>, 218 F.3d 1, 5 (1st Cir. 2000)(citing <u>Mulero-Rodriguez v. Ponte, Inc.</u>, 98 F.3d 670, 672 (1st Cir. 1996)).  The non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial.  <u>See Santiago-Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d at 53 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256, 106 S.Ct. 2505 (1986)).  "[T]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." <u>ATC Realty, LLC v. Town of Kingston</u>, 303 F.3d 91, 94 (1st Cir. 2002)(quoting <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 842 (1st Cir. 1993))(alteration in original)(internal quotation marks omitted).

"[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995). Furthermore, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial. If the evidence presented is subject to conflicting interpretations, or reasonable men might differ as to its significance, summary judgment is improper." Gannon v. Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)(citation and internal quotation marks omitted).

## IV. Discussion

Defendant argues that it "is entitled to summary judgment on all of Plaintiff's claims because the undisputed material facts demonstrate that Plaintiff assumed the risk of his injury as a matter of law by intentionally diving into a shallow pool in knowing disregard of the open and obvious dangers associated with his actions." Defendant Delair L.L.C.'s Memorandum of Law in Support of Its Motion for Summary Judgment ("Defendant's Mem.") at 3-4. Plaintiff counters that "there are genuine issues of material fact to be resolved by the trier of fact and that Defendant Delair is not entitled to judgment as a matter of law." Plaintiff Steven Lopez's Objection to Defendant Delair Group LLC's Motion for Summary Judgment (Dkt. #23) ("Plaintiff's Objection") at 1.

Specifically, Plaintiff contends that Plaintiff did not subjectively understand the risk of all diving into a shallow pool and that the posted warnings were inadequate to inform him of such risk. <u>See</u> Memorandum in Support of Plaintiff Steven Lopez's Objection to Defendant Delair Group LLC's Motion for Summary Judgment ("Plaintiff's Mem.") at 8-9, 11.[4]

> Assumption of the risk is an affirmative defense in a products liability action in Rhode Island. A plaintiff assumes the risk of injury when she knowingly accepts a dangerous situation. In order to establish an assumption-of-risk defense, defendants must prove that the plaintiff knew of the existence of the danger, appreciated its unreasonable character, and voluntarily exposed herself to it. The standard is ordinarily subjective and is based upon what the particular individual in fact saw, knew, and appreciated.

<u>Sheehan v. N. Am. Mktg. Corp.</u>, 610 F.3d 144, 151 (1st Cir. 2010) (internal citations, quotation marks, and footnote omitted); <u>see also</u> <u>D'Allesandro v. Tarro</u>, 842 A.2d 1063, 1066-67 (R.I. 2004). "Whether a plaintiff has assumed the risk of harm is generally a question for a trier of fact. However, if only one rational inference can be drawn from the evidence on this issue, then the trial justice may treat the question as one of law." <u>D'Allesandro</u>, 842 A.2d at 1067 (internal citation omitted); <u>see also</u> <u>Sheehan</u>, 610 F.3d at 152 ("[I]f the facts 'suggest only one reasonable

---

[4] The pages of Plaintiff's Mem. are not numbered. Therefore, the Court utilizes the numbers inserted at the top of each page by the Court's Electronic Case Filing system. Plaintiff's counsel is reminded that Local Rule Cv 5(a)(3) provides that "[w]here a document is more than one page in length, the pages shall be numbered at the bottom center of each page." District of Rhode Island Local Rule ("DRI LR") Cv 5(a)(3).

inference,' the issue becomes a question of law for the judge.")
(quoting <u>Rickey v. Boden</u>, 421 A.2d 539, 543 (R.I. 1980)); <u>id.</u>
(noting that "the courts of Rhode Island have found on multiple
occasions that a plaintiff assumed a risk as a matter of law" and
citing cases).

The facts in <u>Sheehan</u> are strikingly similar to those in the
instant matter. There, the plaintiff, Jennifer Sheehan
("Sheehan"), a thirty-two year old woman, suffered a catastrophic
injury when she broke her neck attempting to dive into a friend's
shallow, above-ground pool. <u>Sheehan</u>, 610 F.3d at 145-46. As a
result of the accident, she was rendered a quadriplegic. <u>Id.</u> at
145.

Prior to her injury, Sheehan and a friend went to a
restaurant, where they shared a drink containing fruit juice and
alcohol. <u>Id.</u> at 146. After leaving the restaurant, they proceeded
to a beach club, where Sheehan consumed more alcohol. <u>Id.</u>
Thereafter, they drove to her friend's home and ultimately, with
her friend's three children, decided to go swimming in the above-
ground pool in the backyard. <u>Id.</u>

The pool was eighteen feet in diameter and four feet high.
<u>Id.</u> At the time of the incident, it was filled with approximately
three and a half feet of water. <u>Id.</u> A ladder over the edge of the
pool was used for entry and exit, and there was no decking or other
platform next to the pool. <u>Id.</u> There, however, a narrow

aluminum coping covering the perimeter of the pool. Id. The function of the coping was to connect the pieces of the pool wall and prevent damage to the top surface of the wall. Id. It was not intended to be stood upon or used for diving. Id. According to Sheehan, the coping "wasn't springy, but it wasn't sturdy either. It was kind of loose." Id. at 147.

The pool contained at least four warnings against diving or jumping, one of which depicted a person striking his head on the bottom of the pool with markings indicating a neck injury. Id. at 146. Sheehan testified that, although she had not read the warnings, had she read them she would have dived anyway. Id. at 147. She further testified that she was aware that diving into shallow water could be dangerous because she could hit her head on the bottom of the pool. Id. However, she also stated that she thought the only danger she faced was scraping the bottom of the pool and that she had never heard of anyone getting hurt from diving into shallow water. Id.

Sheehan used the ladder when she first entered the pool and several times thereafter to help the children out of the pool. Id. After playing in the pool for about thirty minutes, Sheehan hoisted herself up onto the coping, first in a sitting position and then in a standing position. Id. She then performed a shallow dive, intentionally aiming across the pool and not down. Id. After successfully executing her first dive, Sheehan again pulled herself

up onto the coping, first sitting and then standing, in order to attempt a second dive. Id. at 147. However, as she was preparing to dive she lost her balance and entered the pool at a steep angle, described as a "jacknife," and struck her head on the bottom of the pool. Id. This caused her to suffer a burst fracture of the C5 vertebra, which injury resulted in her quadriplegia. Id.

Sheehan subsequently brought suit for negligence, strict liability, breach of express warranty, and breach of implied warranty against the seller and manufacturer of the pool in question. Id. at 145. The district court granted the defendants' motion for summary judgment, holding that as a matter of law Sheehan assumed the risk of her injury when she decided to dive from the coping into the shallow water of an above-ground pool. Id. at 148; see also id. at 151 (noting district court's holding that the defendants "were entitled to summary judgment because Sheehan must be held to have known and appreciated the risk of diving into a shallow, above-ground pool"). The First Circuit affirmed the district court's decision, finding that the assumption of risk defense applied as a matter of law. Id. at 146.

Sheehan argued, as does Plaintiff here, that there were genuine issues of material fact which remained unresolved as to her appreciation of the risk of diving. Sheehan, 610 F.3d at 151-52; see also Plaintiff's Objection at 1; Plaintiff's Mem. at 8-9. Indeed, Plaintiff states that "[t]he undisputed facts of this case

support the conclusion that Plaintiff Steven Lopez did not subjectively understand and perceive the serious risk of injury in executing a horizontal flat dive," Plaintiff's Mem. at 11, and that, according to his aquatics safety expert, "this belief was reasonable in light of the general misconceptions held by residential swimmers regarding the safety of horizontal flat dives," id.; see also id. at 8 ("Steven Lopez testified clearly and consistently that he believed that the execution of a horizontal or flat dive into the pool was safe and appropriate. In fact, his prior experience observing and completing successful horizontal dives confirmed this belief.[5]   He also testified that he understood that the posted 'no diving' signs on the pool meant that vertical dives should not be attempted because that is what the graphic pictorial signs depicted."); id., Ex. E (Preliminary Opinion of Dr. Tom Griffiths ("Griffiths Report")).

The Sheehan court noted, however, that "a plaintiff's own testimony as to his state of mind is not necessarily conclusive[.]" Sheehan, 610 F.3d at 152 (internal quotation marks omitted). The

---

[5] Prior to June 20, 2008, Plaintiff had dived into the Gormans' pool several times on previous occasions. Defendant's SUF ¶ 27.  He had also watched others dive into the Gormans' pool in the past and on June 20, 2008.  Id. ¶ 28.  Prior to his injury on June 20, 2008, Plaintiff had dived horizontally into the Gormans' pool.  Id. ¶ 12; see also Plaintiff's SDF ¶ 12.  Before June 20, 2008, Plaintiff had experience swimming in other pools and in the ocean.  Defendant's SUF ¶ 29.  Some of these pools had both a shallow end and a deep end, while others did not.  Id. ¶ 30.  Plaintiff had dived into some of these other pools.  Id. ¶ 31.  In his previous diving experience, Plaintiff dove into four feet of water.  Id. ¶ 33.  He dove horizontally to avoid hitting the bottom. Id.

court quoted the Restatement (Second) of Torts for the proposition
that:

> There are some risks as to which no adult will be
> believed if he says that he did not know or understand
> them. Thus[,] an adult who knowingly comes into contact
> with a fire will not be believed if he says that he was
> unaware of the risk that he might be burned by it; and
> the same is true of such risks as those of drowning in
> water or falling from a height ....

Id. (quoting Restatement (Second) of Torts § 496D, cmt. d)
(alteration in original). "The risks of diving into shallow water
fall into this category, as to which protestations of ignorance
from an adult are deemed not believable." Id. The Sheehan court
quoted a Rhode Island Supreme Court case, Bucki v. Hawkins, 914
A.2d 491 (R.I. 2007),[6] at length:

> [Plaintiff] chose to dive into dark water without first
> inspecting the lake to determine its depth. The
> plaintiff testified that he had executed successful dives
> off the same dock on three previous occasions and, as a
> result of these past dives, believed the water was [of a
> certain depth]. Despite this knowledge, executing a dive
> into a shallow lake without first ascertaining whether
> there has been any change in depth since one's last dive
> is, to put it mildly, ill-advised.
>
> ...
>
> The danger of diving into shallow water was open and
> obvious to a twenty-four-year-old man, regardless of
> whether a sign was erected alerting him to the danger.
> Therefore, as a matter of law, plaintiff must be held to

---

[6] Plaintiff stresses that Bucki v. Hawkins dealt with landowner
liability with respect to lakefront property, Plaintiff's Mem. at 12, not
product liability, id. at 13. The Sheehan court, however, recognized
this difference but found Bucki's rationale applicable to a product
liability action. See Sheehan, 610 F.3d at 153 ("Though Bucki is a duty-
to-warn case, its underlying rationale remains equally applicable
here.").

have had knowledge and an appreciation of the risk.

...

Although plaintiff testified that he would not have dived off the dock if he had been warned not to do so, we view this assertion skeptically given plaintiff's inclination to dive from the dock on previous occasions despite knowledge of the lake's shallow waters.

Sheehan, 610 F.3d at 152-53 (quoting Bucki, 914 A.2d at 496-97) (alterations in original); cf. Kuras v. Int'l Harvester Co., 820 F.2d 15, 18 (1st Cir. 1987)(finding that defendant had no duty to warn plaintiff of open and obvious danger of moving blade of lawn mower).

The First Circuit found that Sheehan sought to avoid the conclusion that she knew and accepted the risk of diving by "parsing the risk involved." 610 F.3d at 153. Specifically, Sheehan contended that the worst possible outcome she considered was the risk that she would scrape the bottom of the pool on a poorly executed dive. Id. The court rejected her argument, stating that:

[T]he issue is not whether she subjectively believed that the risk could be minimized or avoided.[7] Under Rhode Island law, when the circumstances are such that a person

---

[7] At this point, the court included a footnote which stated:

It would eviscerate, if not eliminate, the defense of assumption of the risk if a plaintiff could defeat it by testifying, in substance, "I knew that the activity was dangerous, and that it bore a risk of serious injury, but I thought I wouldn't get hurt if I were careful." ...

Sheehan, 610 F.3d at 153 n.13. That, in essence, is what Plaintiff is arguing here.

14

is presumed to know the risks of her dangerous conduct, she is charged with knowing all the ordinary risks associated with that conduct. <u>Rickey</u>, 421 A.2d at 543. Thus, Sheehan cannot be said to have assumed only the risk of a perfectly executed shallow dive; the risk that she assumed included the possibility that something would go wrong and the dive would not be perfect. Put another way, the risk of a poorly executed or botched dive is subsumed within the risk of diving generally.

<u>Sheehan</u>, 610 F.3d at 153; <u>see also</u> <u>Austin v. Lincoln Equip.</u> <u>Assocs., Inc.</u>, 888 F.2d 934, 937 (1st Cir. 1989)("It is not [the plaintiff's] exercise of care but his voluntary acceptance of the risk which is at issue."). Sheehan also argued that "she may have assumed the risk of diving but never assumed the risk of falling from the allegedly defective coping." 610 F.3d at 153. The First Circuit disagreed, stating that summary judgment was warranted on the facts of the case because:

> Sheehan stood on the coping *in order to dive*, and the injury that occurred was the *same* one contemplated by the multiple warnings—including on the coping itself. The warnings made clear that no diving should be undertaken (whether from the narrow coping or from anywhere else). Under these circumstances, as a matter of law Sheehan assumed the risk of diving, including the risk that she might fall from the coping into the pool while attempting to dive.

<u>Sheehan</u>, 610 F.3d at 154.

Similarly, Plaintiff here attempts to "parse the risk" by alleging that he knew and appreciated the risk of a vertical dive into the pool but not a horizontal dive. Plaintiff's SDF ¶¶ 35, 39; <u>see also</u> Plaintiff's Mem. at 13 (arguing that the warnings provided by Defendant—similar to those at issue in <u>Sheehan</u>—did not

render the dangers of diving open and obvious, but created confusion because "the graphic warning clearly depicted only the danger of a vertical dive"); id. at 9 ("Steven Lopez was never warned by Carolyn Gorman, or anyone else, of the dangers [of] executing a surface horizontal dive into an above ground swimming pool, had never seen anyone injured by properly executing a surface dive into [a] swimming pool and, accordingly, did not actually perceive the risks of executing a flat horizontal dive into the swimming pool."). Thus, in Plaintiff's view, he did not voluntarily assume the risk. See id. at 10. The Court is not persuaded. As was the case in Sheehan, the warnings stated "NO DIVING," not just no vertical diving. Cf. Sheehan, 610 F.3d at 154 ("The warnings made clear that no diving should be undertaken (whether from the narrow coping or from anywhere else)."). Plaintiff testified at his deposition that at some point before the accident he read the warnings on the pool, Lopez Dep. Day 2 at 41-42, and acknowledged that the warnings stated "no diving," id. at 28. Under Sheehan, the risk Plaintiff undertook, diving into a shallow, above-ground pool, encompassed the risk that even if he dove horizontally something could go wrong, as, unfortunately, was the case.

Plaintiff attempts to distinguish Sheehan on several grounds. Plaintiff first argues that, at the time of his accident, he was a minor, whereas the plaintiff in Sheehan was thirty-two years old.

16

Plaintiff's Mem. at 11.  He additionally notes that the Rhode Island Supreme Court "has yet to rule that a minor plaintiff has assumed the risk of his injuries as a matter of law," id. at 10, and that "it is inappropriate and against Rhode Island law," id., to so determine.

The Court rejects Plaintiff's argument.  Plaintiff was seventeen years old at the time of the incident, Defendant's SUF ¶ 2, just a year removed from adulthood.  The danger of diving into a shallow, above-ground pool is as open and apparent to a seventeen year old as it is to a thirty-two year old or a twenty-four year old.  See Sheehan, 610 F.3d at 153 ("The danger of diving head-first into shallow water in an above-ground swimming pool was, or should have been, obvious to a thirty-two-year-old adult woman of normal intelligence."); Bucki, 914 A.2d at 496 ("The danger of diving into shallow water was open and obvious to a twenty-four-year-old man, regardless of whether a sign was erected alerting him to the danger."); see also Sheehan, 610 F.3d at 154-55 ("[U]nder Rhode Island law, there are certain risks that are so self-evident that a person will be deemed to have understood them as a matter of law.  Diving head-first into a shallow, above-ground pool is such a risk, and bars recovery here.").  This Court does not believe that the Rhode Island Supreme Court would find the word "person" inapplicable to a seventeen year old or that a seventeen year old was incapable of understanding the risk of diving into a shallow,

above-ground pool.

In the context of a claim of negligent failure to warn, the Rhode Island Supreme Court has ruled against a minor plaintiff who argued that signs should have been posted warning against the danger of diving into Newport Harbor. See Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1223-24. The court stated that:

> As a practical matter, the danger of diving into shallow water is one of common knowledge, and one [the plaintiff] admits he was aware of. Nevertheless, [he] dove into the water having not first investigated the depth of the harbor at the place where he intended to dive. We fail to see how a warning would prevent such action.

Id. at 1225. But see Schultz v. Foster-Glocester Reg'l Sch. Dist., 755 A.2d 153, 156 (R.I. 2000)(holding, in case involving cheerleading accident and application of special duty doctrine, that "the particular maneuver in this case may well involve doctrine of assumption of the risk" and declining to apply assumption of risk defense in context of summary judgment).[8] Moreover, courts have found that persons younger than Plaintiff here assumed the risk of injury when diving into a shallow, above-ground pool. See, e.g., Mullen-Hall v. Buranich, Index No.: 5743/99, 2003 WL 174208, at *3 (N.Y. Sup. Ct. Jan. 17, 2003)

---

[8] The Court notes that both before and after Schultz the Rhode Island Supreme Court has upheld application of the assumption of risk doctrine in the context of motions for summary judgment. See, e.g., Kennedy v. Providence Hockey Club, Inc., 376 A.2d 329, 330, 333 (R.I. 1977)(affirming trial justice's granting of summary judgment against plaintiffs because they assumed risks attendant to hockey matches); D'Allesandro v. Tarro, 842 A.2d 1063, 1064-65 (R.I. 2004)(affirming trial justice's decision to grant summary judgment against plaintiff on basis of assumption of risk by walking backwards without looking behind him).

(rejecting argument that eleven year old could not assume the risk as a matter of law); see also id., at *1 ("The shallowness of the water and the inappropriateness of diving into it was open and obvious considering the condition of the pool and the signs displayed on the deck.").

Plaintiff next contends that the plaintiff in Sheehan was intoxicated, whereas here Plaintiff "was not drinking alcohol, taking drugs or otherwise intoxicated at the time of his injuries ...." Plaintiff's Mem. at 11. However, Sheehan's intoxication was not the basis of the First Circuit's decision that she had assumed the risk of diving into a shallow, above-ground pool as a matter of law. See Sheehan, 610 F.3d at 154. In fact, the court dismissed her assertion that the district court failed to consider her intoxicated state as a relevant factor under the assumption of risk doctrine. Sheehan, 610 F.3d at 154 ("[W]e are unimpressed with Sheehan's fallback position that the district court failed to take proper account of her intoxication in assessing her subjective knowledge of the risk of diving."). Thus, Plaintiff's attempt to distinguish Sheehan on this basis is unavailing.

Third, Plaintiff posits that he was not engaging in risk-taking behavior at the time of the accident. Plaintiff's Mem. at 11; see also id. at 4 (noting that Plaintiff "did not dive off the coping, he did not dive from the grass over the wall of the pool, he did not do a handstand on the deck and fall into the pool, he

did not do a somersault into the pool[,] and he did no[t] run off the deck of the pool")(citing Plaintiff's SUF ¶ 49[9]).  However, one could make the argument that performing cannonballs into an above-ground pool containing four feet of water, as Plaintiff testified he did, see Defendant's SUF ¶ 13, could be risky.  In addition, attempting to dive from the deck through a hula hoop proved, tragically, to be risk-taking behavior, as Plaintiff subsequently testified:

> Q.   Did you consider what you were doing that day, diving horizontally through a hoop held by your friend, did you consider that unsafe or dangerous before you did it?
>
> A.   No.
>
> Q.   Even today with what happened, do you consider that to be an unsafe thing to do, to dive horizontally through a hoop held by your friend into a pool?
>
> A.   Yes, I do.

Lopez Dep. Day 2 at 41; see also id. (agreeing that diving through hoop was generally unsafe because "anything can happen").

Finally, Plaintiff argues that he "was not injured as a result of a failed attempt at a horizontal dive causing his head to hit the bottom of the pool, as with the plaintiff in Sheehan, but was injured as the result of a properly executed horizontal dive into the pool," Plaintiff's Mem. at 11, and that, while Sheehan did not

---

[9] Defendant disputes ¶ 49 of Plaintiff's SUF, declaring that "'[r]isk taking behavior' is a conclusion of law not a statement of fact."  Defendant Delair L.L.C.'s Statement of Disputed Facts Pursuant to Local Rule Cv 56(a)(5) ¶ 49.  The Court is inclined to agree.

remember how she fell into the pool, Plaintiff specifically recalls his entry into the pool, id. at 11-12 (citing Sheehan, 610 F.3d at 147, 149). It is true that in Sheehan it was undisputed that Sheehan's injuries were caused by the top of her head striking the bottom of the pool, 610 F.3d at 148, whereas in the instant matter Plaintiff disputes that his head hit the bottom, see Plaintiff's SDF ¶ 22; see also Plaintiff's Mem. at 11-12; id., Ex. D (Affidavit of Adetokunbo A. Oyelese, MD, PH.D. ("Oyelese Aff.")) ¶¶ 6, 10. Dr. Oyelese, Plaintiff's treating neurosurgeon, stated that he obtained a history from Plaintiff "and was informed that he was swimming in a friend's pool and had a diving accident when he dove head first horizontally into the pool and did a belly flop." Oyelese Aff. ¶ 6. Based on that information, Dr. Oyelese opined that:

> It is my opinion to a reasonable degree of medical certainty, based upon the history obtained from the patient above that Mr. Lopez sustained his spinal cord injury as a result of his entry into the swimming pool on June 20, 2008, when his chin went forward towards his chest while entering the water in a horizontal approach. Specifically, if as described, Mr. Lopez sustained his injuries while performing a horizontal dive and his injuries did not occur as a result of his head making contact with the bottom or side of the pool, or striking an object or a person within the pool.

Id. ¶ 10; see also Griffiths Report at 2 ("As Steven traversed through the hula hoop horizontally, his legs hit the inside of the hoop which caused him to instinctively tuck his chin and forcefully

flex his neck.[10]  This hyper flexion-dislocation at the C4-C5 location of the spinal cord caused his quadriplegia."). The Court need not resolve this dispute because it is undisputed that Plaintiff was injured while diving into the Gormans' pool, no matter what angle he entered the pool.[11]  See Oyelese Aff. ¶ 6; see also Plaintiff's Mem. at 4 ("Plaintiff performed a face-first horizontal entry-type dive into said pool, causing his permanent injuries.")(citing Plaintiff's SUF ¶ 44).  The danger of doing so was open and obvious, even to a seventeen year old.

The Court is unpersuaded by Plaintiff's attempts to distinguish Sheehan.  Therefore, the Court finds that Sheehan controls the instant matter.  Although sympathetic to Plaintiff, the Court is constrained to conclude that he assumed the risk of his injury when he dove into the Gormans' shallow, above-ground pool.  That is the only rational inference which can be drawn.

## V.  Conclusion

For the reasons stated above, I recommend that Defendant's

---

[10] Plaintiff, however, testified at his deposition that he did not know of any part of his body hitting any part of the hula hoop.  See Defendant's SUF, Ex. B (Deposition of Steven Lopez, Day 2 ("Lopez Dep. Day 2") at 13-14.

[11] "A factual dispute is material if it has the potential to affect the outcome of the litigation under the applicable law; it is genuine if there is evidence sufficient to support rational resolution of the point in favor of the nonmoving party."  DeNovellis v. Shalala, 124 F.3d 298, 305 n.3 (1st Cir. 1997)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505 (1986)).  The Court need not address whether the above factual dispute is genuine because the Court finds that it is not material, i.e., it will not "affect the outcome of the litigation ...," id.

Motion for Summary Judgment be granted.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen (14) days of its receipt.  <u>See</u> Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).


*/s/ David L. Martin*
DAVID L. MARTIN
United States Magistrate Judge
March 2, 2012